**HALPER SADEH LLP**
Zachary Halper, Esq.
186 Darwin Lane
North Brunswick, NJ 08902
Tel: (212) 763-0060
Fax: (646) 776-2600
Email: zhalper@halpersadeh.com

*Counsel for Plaintiff*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JEFFREY MILES,<br><br>    Plaintiff,<br><br>    v.<br><br>COOPER TIRE & RUBBER COMPANY, JOHN J. HOLLAND, BRADLEY E. HUGHES, STEVEN M. CHAPMAN, SUSAN F. DAVIS, KATHRYN P. DICKSON, TYRONE M. JORDAN, TRACEY I. JOUBERT, GARY S. MICHEL, BRIAN C. WALKER, and ROBERT D. WELDING,<br><br>    Defendants. | Case No:<br><br>**COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Jeffrey Miles ("Plaintiff"), by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys.

**NATURE OF THE ACTION**

1.       This is an action against Cooper Tire & Rubber Company ("Cooper Tire" or the "Company"), and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange

1

Act"), 15 U.S.C. §§ 78n(a) and 78t(a), and Rule 14a-9 promulgated thereunder by the SEC, 17 C.F.R. § 240.14a-9, in connection with the proposed acquisition (the "Proposed Transaction") of Cooper Tire by The Goodyear Tire & Rubber Company ("Goodyear"), and Vulcan Merger Sub Inc., a direct, wholly owned subsidiary of Goodyear ("Merger Sub").

## JURISDICTION AND VENUE

2.      The claims asserted herein arise under and pursuant to Sections 14(a) and 20(a) of the Exchange Act (15 U.S.C. §§ 78n(a) and 78t(a)) and Rule 14a-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14a-9).

3.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

4.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as a substantial portion of the transactions and wrongs complained of herein had an effect in this District, the alleged misstatements entered and the subsequent damages occurred in this District, and the Company's products are sold in this District, including through various distribution channels.

5.      In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6.      Plaintiff is, and has been at all relevant times hereto, an owner of Cooper Tire common stock.

7.     Defendant Cooper Tire, together with its subsidiaries, designs, manufactures, markets, and sells replacement tires in North America, Latin America, Europe, and Asia. The Company is incorporated in Delaware. The Company's common stock trades on the New York Stock Exchange ("NYSE") under the ticker symbol, "CTB."

8.     Defendant John J. Holland ("Holland") is Non-Executive Chairman of the Board of the Company.

9.     Defendant Bradley E. Hughes ("Hughes") is President, Chief Executive Officer ("CEO"), and a director of the Company.

10.     Defendant Steven M. Chapman ("Chapman") is a director of the Company.

11.     Defendant Susan F. Davis ("Davis") is a director of the Company.

12.     Defendant Kathryn P. Dickson ("Dickson") is a director of the Company.

13.     Defendant Tyrone M. Jordan ("Jordan") is a director of the Company.

14.     Defendant Tracey I. Joubert ("Joubert") is a director of the Company.

15.     Defendant Gary S. Michel ("Michel") is a director of the Company.

16.     Defendant Brian C. Walker ("Walker") is a director of the Company

17.     Defendant Robert D. Welding ("Welding") is a director of the Company.

18.     Defendants Holland, Hughes, Chapman, Davis, Dickson, Jordan, Joubert, Michel, Walker, and Welding are collectively referred to herein as the "Individual Defendants."

19.     Defendants Cooper Tire and the Individual Defendants are collectively referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

**A. Background of the Company and The Proposed Transaction**

20.     Cooper Tire, with its subsidiaries, is a leading manufacturer and marketer of

replacement tires. It is the fifth largest tire manufacturer in North America and, according to a recognized trade source, the Cooper family of companies is the thirteenth largest tire company in the world based on sales.

21.     Cooper Tire specializes in the design, manufacture, marketing and sales of passenger car, light truck, truck and bus radial, motorcycle and racing tires.

22.     The Company is organized into four business segments: North America, Latin America, Europe and Asia.

23.     Major distribution channels and customers include independent tire dealers, wholesale distributors, regional and national retail tire chains, large retail chains that sell tires as well as other automotive products, mass merchandisers and digital channels.[1]

24.     On February 22, 2021, Cooper Tire and Goodyear announced that they had entered into a definitive agreement whereby Goodyear would acquire Cooper Tire for $41.75 per share in cash and a fixed exchange ration of 0.907 shares of Goodyear common stock per Cooper share. The press release announcing the merger states, in pertinent part:

### Goodyear to Acquire Cooper, Creating Stronger U.S.-Based Leader in Global Tire Industry

- Strengthens Leadership Position in Global Tire Industry

- Combines Two Complementary Brand Portfolios with a Comprehensive Offering Across the Value Spectrum

- Provides Significant, Immediate and Long-Term Financial Benefits

- Opportunity to Create Additional Value from Manufacturing and Distribution

- Increases Scale to Support Investments in New Mobility and Fleet Solutions

---

[1] Some of these distribution channels are located in New Jersey.

AKRON, Ohio and FINDLAY, Ohio, Feb. 22, 2021 /PRNewswire/ -- The Goodyear Tire & Rubber Company (Nasdaq: GT) and Cooper Tire & Rubber Company (NYSE: CTB) today announced that they have entered a definitive transaction agreement under which Goodyear will acquire Cooper in a transaction with a total enterprise value of approximately $2.5 billion. The transaction will expand Goodyear's product offering by combining two portfolios of complementary brands. It will also create a stronger U.S.-based manufacturer with increased presence in distribution and retail channels while combining both companies' strengths in the highly profitable light truck and SUV product segments. The combined company will have approximately $17.5 billion in pro forma 2019 sales.

Under the terms of the transaction, which has been approved by the Boards of Directors of both companies, Cooper shareholders will receive $41.75 per share in cash and a fixed exchange ratio of 0.907 shares of Goodyear common stock per Cooper share for a total equity value of approximately $2.8 billion. Based on Goodyear's closing stock price on February 19, 2021, the last trading day prior to the announcement, the implied cash and stock consideration to be received by Cooper shareholders is $54.36 per share, representing a premium of 24% to Cooper's closing stock price on February 19, 2021, and a premium of 36% to Cooper's 30-day volume weighted average price as of the close on February 19, 2021. Upon closing of the transaction, Goodyear shareholders will own approximately 84% of the combined company, and Cooper shareholders will own approximately 16%.

Founded in 1914, Cooper is the 5th-largest tire manufacturer in North America by revenue with approximately 10,000 employees working in 15 countries worldwide. Cooper products are manufactured in 10 facilities around the globe, including wholly-owned and joint venture plants. The company's portfolio of brands includes Cooper, Mastercraft, Roadmaster and Mickey Thompson.

"This is an exciting and transformational day for our companies," said Richard J. Kramer, Goodyear chairman, chief executive officer and president. "The addition of Cooper's complementary tire product portfolio and highly capable manufacturing assets, coupled with Goodyear's technology and industry leading distribution, provides the combined company with opportunities for improved cost efficiency and a broader offering for both companies' retailer networks. We are confident this combination will enable us to provide enhanced service for our customers and consumers while delivering value for shareholders."

Kramer added, "We have a great deal of respect for Cooper's team and share a commitment to integrity, quality, agility and teamwork. We look forward to welcoming Cooper to the Goodyear family."

*      *      *

5

**Timing, Approvals and Financing**

The transaction is subject to the satisfaction of customary closing conditions, including receipt of required regulatory approvals and the approval of Cooper shareholders. The transaction is expected to close in the second half of 2021.

Goodyear intends to fund the cash portion of the transaction through debt financing and has secured a committed bridge financing facility led by JPMorgan Chase Bank, N.A.

\*       \*       \*

**Advisors**

Lazard is serving as lead financial advisor, J.P. Morgan Securities LLC is serving as financial advisor and Paul, Weiss, Rifkind, Wharton & Garrison LLP and Covington and Burling LLP are serving as legal advisors to Goodyear. Goldman Sachs & Co. LLC is serving as the exclusive financial advisor and Jones Day is serving as legal advisor to Cooper.

\*       \*       \*

**About The Goodyear Tire & Rubber Company**

Goodyear is one of the world's largest tire companies. It employs about 62,000 people and manufactures its products in 46 facilities in 21 countries around the world. Its two Innovation Centers in Akron, Ohio, and Colmar-Berg, \ Luxembourg, strive to develop state-of-the-art products and services that set the technology and performance standard for the industry. For more information about Goodyear and its products, go to www.goodyear.com/corporate. GT-FN

**About Cooper Tire & Rubber Company**

Cooper Tire & Rubber Company is the parent company of a global family of companies that specializes in the design, manufacture, marketing and sale of passenger car, light truck, medium truck, motorcycle and racing tires. Cooper's headquarters is in Findlay, Ohio, with manufacturing, sales, distribution, technical and design operations within its family of companies located in 15 countries around the world. For more information on Cooper, visit www.coopertire.com, www.facebook.com/coopertire or www.twitter.com/coopertire.

25.     On March 19, 2021, Defendants caused to be filed with the SEC a Form S-4 Registration Statement (the "Registration Statement") pursuant to Section 14(a) of the Exchange Act in connection with the Proposed Transaction.

6

**B.  The Registration Statement Contains Materially False and Misleading Statements and Omissions**

26.     The Registration Statement, which recommends that Cooper Tire shareholders vote in favor of the Proposed Transaction, omits and/or misrepresents material information concerning: (i) the Company's, Goodyear's, and the pro forma financial projections; (ii)  potential conflicts of interest involving the Company's financial advisor, Goldman Sachs & Co. LLC ("Goldman"); and (iii) the sales process leading up to the Proposed Transaction; and (iv) the financial analyses performed by Goldman in connection with its fairness opinion.

27.     The omission of the material information (referenced below) renders the following sections of the Registration Statement false and misleading, among others: (i) Background of the Merger; (ii) Cooper Tire Board Recommendation and Its Reasons for the Transaction; (iii) Opinion of Cooper Tire's Financial Advisor; and (iv) Cooper Tire Unaudited Prospective Financial Information.

28.     Unless and until the material misstatements and omissions (referenced below) are remedied before the anticipated shareholder vote on the Proposed Transaction, Cooper Tire shareholders will be forced to make a voting decision on the Proposed Transaction without full disclosure of all material information. In the event the Proposed Transaction is consummated, Plaintiff may seek to recover damages resulting from Defendants' misconduct.

**1.  Material Omissions Concerning the Company's, Goodyear's, and the Pro Forma Financial Projections**

29.     The Registration Statement omits material information concerning the Company's financial projections.

30.     The Company's senior management prepared certain unaudited financial projections in the ordinary course of corporate planning, which were provided to Goldman and Goodyear in connection with the Proposed Transaction (the "Cooper Tire Projections"). *See*

Registration Statement at 66.

31.    According to the Company, "portions of these financial projections . . . are included in this proxy statement/prospectus . . . only because this information was provided to Goodyear, the Cooper Tire Board and Goldman Sachs for use in connection with its financial analyses[.]" *See Id.*

32.    First, all of the projections provided to the Board and/or Goldman must be disclosed to shareholders, not "portions" of the financial projections.

33.    Second, with respect to the Cooper Tire Projections that had been disclosed, the Registration Statement misleadingly omits: (1) all line items underlying (i) Revenue, (ii) EBITDA, (iii) Total Capex, and (iv) Unlevered Free Cash Flow; (2) the Company's net income projections; and (3) a reconciliation of all non-GAAP to GAAP financial metrics.

34.    When a company discloses non-GAAP financial metrics in a Registration Statement, the company must also disclose all projections and information necessary to make the non-GAAP metrics not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial metrics disclosed or released with the most comparable financial metrics calculated and presented in accordance with GAAP. The SEC has increased its scrutiny of a company's use of non-GAAP financial measures as such measures can be misleading and "crowd out" more reliable GAAP information.[2]

---

[2] Mary Jo White, *Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability* (June 27, 2016), https://www.sec.gov/news/speech/chair-white-icgn-speech.html (footnotes omitted) (last visited Mar. 25, 2021) ("And last month, the staff issued guidance addressing a number of troublesome practices which can make non-GAAP disclosures misleading: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data. I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures.").

35.     Third, while the Registration Statement discloses that Goldman reviewed and relied upon Goodyear's projections prepared by its management (the "Goodyear Projections") and certain pro forma forecasts (the "Pro Forma Forecasts"), it fails to disclose these projections.

36.     More specifically, the Registration Statement provides that Goldman relied on the Goodyear Projections and Pro Forma Forecasts in its fairness opinion, stating in pertinent part:

> In connection with rendering the opinion described above and performing its related financial analyses, Goldman Sachs reviewed, among other things:
>
> *     *     *
>
> • certain internal financial analyses and forecasts for Goodyear standalone prepared by its management (the "Goodyear projections");
>
> *     *     *
>
> • certain analyses and forecasts for Goodyear pro forma for the transaction comprised of the Goodyear projections, the internal financial analyses and forecasts for Cooper Tire prepared by Cooper Tire's senior management and the synergies, each as approved for Goldman Sachs' use by Cooper Tire (the "pro forma forecasts").

37.     Thus, the Goodyear Projections and Pro Forma Forecasts must be disclosed because, *inter alia*, Cooper Tire shareholders are expected to own 16% of the combined company if the Proposed Transaction is consummated.

38.     Further, the disclosure of the aforementioned financial information is material because it would provide the Company's shareholders with a basis to project the future financial performance of the Company and the combined company and would allow shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion. Shareholders cannot hope to replicate management's inside view of the future prospects of the Company and combined company. Without such information, which is uniquely possessed by Defendant(s) and the Company's financial advisor, the Company's shareholders are unable to determine how much weight, if any, to place on the Company's financial advisor's fairness opinion in determining whether to vote for or against the Proposed Transaction.

39.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

## 2.   Material Omissions Concerning Potential Conflicts of Interest Involving Goldman

40.     The Registration Statement omits material information concerning potential conflicts of interest involving Goldman.

41.     The Registration Statement provides that Goldman delivered a relationship disclosure letter to Cooper Tire on November 23, 2020, which for some reason had to be updated nearly two months later on January 21, 2021 and again on February 16, 2021. *See* Registration Statement at 52, 54, 56.

42.     The Registration Statement, however, fails to disclose a fair summary of the letters, including whether the letter(s) disclosed any potential conflicts of interest involving Goldman at various stages of the sales process.

43.     Disclosure of a financial advisor's compensation and potential conflicts of interest to shareholders is required due to their central role in the evaluation, exploration, selection, and implementation of strategic alternatives and the rendering of any fairness opinions. Disclosure of a financial advisor's potential conflicts of interest may inform shareholders on how much weight to place on that analysis.

44.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

## 3.   Material Omissions Concerning the Sales Process Leading up to the Proposed Transaction

45.     The Registration Statement omits material information concerning the sales process leading up to the Proposed Transaction.

46.     The Registration Statement provides that, during the sales process, the Company

entered into confidentiality agreements with potential buyers, including Goodyear, Party B, Party C, and Party D.

47.    The confidentiality agreement between: (1) Goodyear and Cooper Tire "included an 18-month standstill provision, which provided Goodyear the ability to make offers on a confidential basis to the Cooper Tire Board, including in the event that Cooper Tire entered into a definitive agreement with respect to a transaction or series of related transactions directly or indirectly involving the sale, transfer or merger of a majority of the voting securities of Cooper Tire or the consolidated assets of Cooper Tire"; (2) Party B and Goldman Sachs (on behalf of Cooper Tire) led to the "disclos[ure] [of] Cooper Tire's identity"; (3) Party C and Cooper Tire contained "customary non-disclosure provisions and a standstill arrangement."; and (4) Party D and Goldman Sachs (on behalf of Cooper Tire) led to the "disclos[ure] [of] Cooper Tire's identity[.]" *See* Registration Statement at 51-52, 55.

48.    The Registration Statement, however, fails to disclose: (i) the relevant terms of ***all*** confidentiality agreements (including those between Goldman Sachs on behalf of Cooper Tire and Parties B and D), including whether such agreements contained standstill provisions with "don't ask, don't waive" (DADW) provisions (including their time of enforcement) that could preclude interested parties from making superior offers for the Company; and (ii) what constitutes a "customary" non-disclosure provision and standstill arrangement.[3]

49.    Without this information, the Company's shareholders may have the mistaken belief that potential suitors are or were permitted to submit superior proposals for the Company, when in fact they are or were contractually prohibited from doing so. This information is material

---

[3] For example, the terms contained in the confidentiality agreement between the Company and Goodyear is described with specificity, unlike the others.

because a reasonable Company shareholder would want to know, prior to voting for or against the Proposed Transaction, whether other potential buyers are or were foreclosed from submitting a superior proposal.

50.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 4.   Material Omissions Concerning Goldman's Analyses

51.     In connection with the Proposed Transaction, the Registration Statement omits material information concerning analyses performed by Goldman.

52.     With respect to Goldman's "*Selected Companies Analysis*," the Registration Statement fails to disclose the individual multiples and financial metrics of the companies that Goldman observed in its analyses.

53.     The Registration Statement fails to disclose the following concerning Goldman's "*Illustrative Discounted Cash Flow Analysis*": (1) all line items underlying Cooper Tire's projected unlevered free cash flows for the years 2021 through 2025; (2) the range of illustrative terminal values for Cooper Tire; (3) the individual inputs and assumptions underlying the (i) perpetuity growth rates ranging from (0.4)% to 2.9%, (ii) range of discount rates of 9.25% to 10.25%, and (iii) multiples ranging from 4.00x to 5.50x; (4) the estimated net cash of Cooper Tire as of December 31, 2020; (5) the minority interest as of December 31, 2020; and (5) the fully diluted number of shares of Cooper Tire common stock.

54.     The Registration Statement fails to disclose the following concerning Goldman's "*Illustrative Present Value of Future Share Price Analysis*": (1) the individual inputs and assumptions underlying the discount rate of 10.0%; (2) Goldman's basis for selecting the illustrative multiple range of 3.50x to 5.00x; (3) the assumed amount of net cash and the assumed minority interest as of the relevant year-end; (6) the projected year-end fully diluted shares of

Cooper Tire common stock outstanding; (7) the value of dividends per share expected to be paid over the applicable period.

55.     With respect to Goldman's "*Premia Analysis*," the Registration Statement fails to disclose: (1) the transactions observed by Goldman in its analyses; and (2) the premiums paid therein.

56.     The valuation methods, underlying assumptions, and key inputs used by Goldman in rendering its purported fairness opinion must be fairly disclosed to Cooper Tire shareholders. The description of Goldman's fairness opinion and analyses, however, fails to include key inputs and assumptions underlying those analyses. Without the information described above, Cooper Tire shareholders are unable to fully understand Goldman's fairness opinion and analyses, and are thus unable to determine how much weight, if any, to place on them in determining whether to vote for or against the Proposed Transaction.

57.     This omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

## COUNT I
### For Violations of Section 14(a) and Rule 14a-9 Promulgated Thereunder
### Against All Defendants

58.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

59.     During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Registration Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder by the SEC.

60.     Each of the Individual Defendants, by virtue of his/her positions within the

Company as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a) of the Exchange Act. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Registration Statement with respect to the Proposed Transaction. The Defendants were, at minimum, negligent in filing the materially false and misleading Registration Statement.

61.     The false and misleading statements and omissions in the Registration Statement are material in that a reasonable shareholder would consider them important in deciding how to vote on the Proposed Transaction.

62.     By reason of the foregoing, Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

63.     Because of the false and misleading statements and omissions in the Registration Statement, Plaintiff is threatened with irreparable harm.

**COUNT II**
**Violations of Section 20(a) of the Exchange Act**
**Against the Individual Defendants**

64.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

65.     The Individual Defendants acted as control persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their senior positions as officers and/or directors of the Company and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Registration Statement filed with the SEC, they had the power to and did influence and control, directly or indirectly, the decision-making of the Company, including the content and

dissemination of the false and misleading Registration Statement.

66.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Registration Statement, and to correct promptly any public statements issued by the Company which were or had become materially false or misleading.

67.     In particular, each of the Individual Defendants had direct and supervisory involvement in the operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Individual Defendants were provided with or had unlimited access to copies of the Registration Statement and had the ability to prevent the issuance of the statements or to cause the statements to be corrected. The Registration Statement at issue contains the unanimous recommendation of the Individual Defendants on the special committee to approve the Proposed Transaction. Thus, the Individual Defendants were directly involved in the making of the Registration Statement.

68.     In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction. The Registration Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the Individual Defendants.

69.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a)

of the Exchange Act.

70.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, the Company's shareholders will be irreparably harmed.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.     Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until Defendants disclose and disseminate the material information identified above to Company shareholders;

B.     In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.     Declaring that Defendants violated Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9 promulgated thereunder;

D.     Awarding Plaintiff reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

E.     Granting such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: March 25, 2021                                        Respectfully submitted,

**HALPER SADEH LLP**

/s/ Zachary Halper
Zachary Halper, Esq.
186 Darwin Lane
North Brunswick, NJ 08902
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: zhalper@halpersadeh.com

Daniel Sadeh, Esq. (*pro hac vice* application
forthcoming)
667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600

*Counsel for Plaintiff*